# Wytheville.

## D. C. CLARKE, TRADING AS THE LOUISVILLE REAL ESTATE AND DEVELOPMENT CO. v. JAMES T. COSBY AND J. A. STRATTON.

June 12, 1930.

Absent, Campbell and Epes, JJ.

The opinion states the case.

*H. Carter Redd*, for the plaintiff in error.

*J. M. Turner* and *Haskins Hobson*, for the defendants in error.

PRENTIS, C. J., delivered the opinion of the court.

D. C. Clarke, trading as the Louisville Real Estate and Development Company, hereafter called the defendant, complains of a judgment against him in favor of James T. Cosby and J. A. Stratton, hereafter called the plaintiffs. The defendant was in the business of developing, advertising and selling real estate at auction for property owners. The plaintiffs were real estate salesmen in Richmond. The defendant offered the plaintiffs two per cent commission on all such business solicited by them and secured. The petition for attachment (the defendant being a non-resident) alleges that the plaintiffs were the procuring cause of a contract between W. B. Davie and the defendant for the sale of a tract of land known as Summer Hill Plaza, and that they are therefore entitled to recover as brokers two per cent of the gross amount received on account of the sale of that property. The case was submitted to a jury who found in favor of the plaintiffs. Upon their verdict the trial court entered judgment, and it is of this that the defendant is here complaining. There is little conflict in the testimony as to the essential facts.

The plaintiffs, together with Robards and Dresback, two employees of the defendant, examined Mr. Davie's property and found that it was well adapted for division into lots and public sale. The plaintiffs testify that they informed Mr. Davie of the defendant's methods and sought to interest him in having his property sold by the defendants. According to their testimony Davie did not seem to be inclined to talk or treat with them, saying that he had been bothered by real estate agents. Cosby told Davie that the defendant would shortly conduct a sale at Bon Air and suggested that Mr. Davie attend that sale and see how he liked the defendant's methods. Davie, who was

introduced, as their witness, by the plaintiffs and by whose testimony, so far as it is not in direct conflict with their own, they are certainly bound, testified that he told them "that he did not care to be bothered with real estate men, and that they talked for a while on general topics and that after about thirty minutes the gentlemen left. That he did not know what Mr. Cosby and Mr. Stratton wanted; that all they told him was that they wanted him to go to see a sale of real estate which would take place at Bon Air. That nothing was said about Mr. Clarke, and that they did not in any way recommend Mr. Clarke to him but did say that they wanted him (Davie) to see how Mr. Clarke conducted a sale; that they never asked him to make a contract or said anything about a contract to sell his property; that they may have said something about it, but if they had he did not know it. That this was the only time that either Mr. Stratton or Mr. Cosby had ever come to see him; that he had had no conversation with them before or since. About two months after this visit he went to see Mr. Robards (an employee of the defendant) at his hotel, and not finding him in left a note for him requesting him to come down to see him (Davie), which Mr. Robards did with Mr. Clarke within two or three days. That he (Davie) had seen the advertisement of real estate put out by Mr. Clarke before the visit of Mr. Cosby and others, and had also seen some since; that Mr. Clarke and Mr. Robards came as stated and that after talking with them he gave Mr. Clarke a contract to sell his property. * * * That nothing that Mr. Cosby or Mr. Stratton had said or done had influenced him in making a contract with Mr. Clarke; that their names were not mentioned at the time the contract was made by him or by Mr. Clarke.

■ During the period of the understanding between the plaintiffs and the defendant they secured or induced contracts for the sale of several tracts of land which were sold by the defendant at public auction in accordance with his methods and he paid the plaintiffs the agreed two per cent commission. Then misunderstandings arose, the plaintiffs claiming commission on certain other sales, which the defendant had declined to pay, claiming that nothing was yet due as commissions because settlements had not been made, and in one instance that the title to the land had proved defective. Actions were thereupon brought by the plaintiffs for commissions, against the defendant, which were promptly settled or compromised by the attorneys of the parties before trial. As the result of these misunderstandings the relations of the plaintiffs and the defendant were severed before the plaintiffs had secured any contract with Davie. The plaintiff, Cosby, expresses this fact thus: "That he had quit, and had not done anything for Mr. Clarke since, and told Mr. Clarke that he would not work for him any longer, and has not. That previously he had solicited a sale of some property in Louisa county from Mrs. Duke who signed a contract, for Clarke, but that someone else was interested in the property and they had not signed, and that the property was too small by itself for Clarke to conduct a sale, and that there was a prospect of getting the adjoining property known as 'Jordan Castle,' a large tract." He also states that "after July 20 he represented a competitor of the defendant in conducting such real estate sales, and that he went up to Louisa county to look over the property simply as a friend of Mrs. Duke, whom he had known for a long time, and to show this competitor, Mr. Smith, Mrs. Duke's property", and that "this was after

he had quit Mr. Clarke's services and before the Davie contract was made."

The defendant, in referring to this severance of relations testifies: "That Mr. Cosby became angry and left, saying that he was going to quit working for him (Clarke) and that there were others he could work for and he would do nothing more for Mr. Clarke," and that evening notice of suit was served on him. This appears to refer not to this but to the previous proceeding. He also testifies that the settlement of these previous suits was June 27, 1928; "that it was about two months after the conversation with Mr. Cosby, in which Mr. Cosby had become angry and told him that there were others he could work for and that he was resigning and would work for him no longer, when Mr. Robards showed him a card from Mr. Davie, requesting him to come to see him, and thereupon he and Mr. Robards went down to see Mr. Davie and Mr. Davie placed his property with them for sale," making a contract, dated July 21, 1928, for the subdivision, development, advertisement and sale within thirty days.

Several errors are assigned:

On motion of the plaintiffs the court gave the jury instruction A: "The court instructs the jury that there can be no recovery in this case unless the plaintiffs have shown by a preponderance of the evidence that a contract existed between the plaintiff Cosby or the plaintiff Stratton, or either of them, and the defendant Clarke, and that Cosby and Stratton accomplished all required by said contract and the burden of proof is on the plaintiffs to establish this by a fair preponderance of the evidence."

This instruction is misleading because it is too vague as applied to the testimony in this case. Under the

agreement between the plaintiffs and defendant the burden of proving that the plaintiffs were the procuring cause of the contract between Davie and the defendants was certainly upon the plaintiffs and the testimony shows that they did not procure the Davie contract. For reasons which are hereafter stated we think it unnecessary to elaborate upon this conclusion.

The court also gave, over the objection of the defendant, instruction B, which reads: "The court instructs the jury that if they believe from the evidence that the defendant, D. C. Clarke, agreed with James T. Cosby and J. A. Stratton, or either of them, that he would pay them two per cent of the gross proceeds of sale for their services in procuring lands to be sold by said D. C. Clarke at his auction sales, and that they, or either of them, are the cause of D. C. Clarke or his agent and W. B. Davie coming together and which afterwards resulted in their entering into a contract, under which the said Davie lands were sold by said Clarke for the sum of $32,180.68, then you should find for the plaintiffs against the defendant, D. C. Clarke, in the sum of $643.61. If, however, you should believe from the evidence that the plaintiffs were to receive only one per cent for such services then you should find for the plaintiffs against the said defendant in the sum of $321.80."

Instead of this instruction the court should have given in substance the instructions 3 and 4 which were offered for the defendants and refused. Instruction 3 reads: "The court instructs the jury that if they believe from the evidence that Cosby and Stratton severed their connection with Clarke before a contract had been made between Davie and Clarke and discontinued their efforts, and that later Clarke secured from Davie a contract for a sale of the land mentioned

in the plaintiffs' petition, that then the said Cosby and Stratton are not entitled to recover in this case and they should find a verdict for the defendant.''

■ The testimony unquestionably shows that the plaintiffs had severed their connection with Clarke before the Davie contract was entered into and had previously discontinued all their efforts to secure such a contract with Davie. Under such circumstances without more there can be no recovery of commission. Of course we do not mean to say that there can be no recovery in cases in which there has been a severance of relations by fault of the principal in bad faith and for the very purpose of avoiding the payment of commissions to a broker who has faithfully served him. There is, however, no evidence of any such fault on the part of the defendant in this case. There is not the slightest evidence that the brokers were wrongfully discharged, and the uncontradicted evidence that the plaintiffs discontinued all their efforts in behalf of the defendant and were serving a competitor in business in connection with the Louisa county land before the Davie contract was secured. It is not a case in which there was a conflict in the parol evidence which should be submitted to a jury. There was no conflict about the facts on which this Instruction 3 is based and it should have been given.

The court also refused to give Instruction 4 which reads: "The court instructs the jury that before the plaintiffs can recover in this case they must show from the evidence that they were the procuring cause of the contract made between Davie and Clarke; that they were the cause of the execution of the contract between Davie and Clarke. It matters not that they may have introduced the parties who would otherwise

never have met, or that they have created impressions which later materially assist in the consummation of the contract.

"Unless they produced the contract or were the cause of procuring the contract in accordance with the contract between them and Clarke, they cannot recover.

■■ "A broker is never entitled to commissions for failing to perform his contract. To entitle them to commissions they must succeed and they take the entire risk of failure, for their reward comes only as a consequence of their success. If they fail to procure a contract, or abandon their efforts in endeavoring to procure a contract, they do not earn their commissions." There may be fair objection to the last clause of this instruction. It seems to be substantially a quotation from the opinion of this court, in *Leicht-Benson Realty & Construction Corp.* v. *J. D. Stone & Co.*, 138 Va. 511, 121 S. E. 883, 43 A. L. R. 1100. While it states the law in the abstract, such abstract statements of the law should not be given to juries in the form of instructions. Instructions should be based upon the evidence in the case then being tried and the jury should be instructed as to the legal conclusion resulting from the concrete or particular facts of the case. The substance of this instruction is that the plaintiffs could not recover unless they were the procuring cause of the contract between Davie and the defendant. Their cause of action is based upon their allegation and contention that they were the procuring cause of this contract with Davie. They have not only failed to show that they secured the Davie contract, but the admitted facts are that they ceased their efforts before the Davie contract was secured, and the testimony of their own witness Davie clearly shows

that they were not the procuring cause. This instruction, in its substance, should have been given and the court erred in refusing it.

The legal questions arising out of the facts of this case are not novel, and the principles applicable have been frequently determined. Among the later Virginia cases are these: *Long* v. *Flory*, 112 Va. 721, 72 S. E. 723. There was a special contract between the owner and the broker for sale of this land on commission at an agreed price. The agent failed to procure the price though the principal later sold to another who in turn sold to the person whom the agent had first interested in the property. It was held that the broker or agent could not recover unless it appeared that his principal had wrongfully prevented the making of the sale which would have been made but for the owner's interference, and it is said in that connection that the agent may have made a hard contract but in order to recover he is bound to show compliance with it.

*Leicht-Benson Realty Construction Corp.* v. *Stone, supra.* In that case the general principles are thus summarized: "A broker is never entitled to commissions for failing to perform his contract. To entitle him to his commissions he must succeed and he takes the entire risk of failure, for his reward comes only as a consequence of his success. He may devote his time and labor and expend his money with ever so much devotion to the interests of the owner, and yet, if he fails to procure a purchaser, abandons his efforts, or his authority is fairly and in good faith terminated, he does not earn his commissions." *Mitchell* v. *Hughes,* 143 Va. 393, 130 S. E. 225.

*Patton* v. *Garnett*, 147 Va. 1009, 133 S. E. 495, was a case in which the broker's authority was revoked and sale thereafter made at a smaller price than that

at which the property had been previously offered, but it was shown that this revocation was not made in bad faith and recovery of the commission was denied.

There is an instructive note in the case of *Max Rosenfield* v. *James J. Wall*, 94 Conn. 418, 109 Atl. 409, 9 A. L. R. 1194, in which, while recognizing the accepted rule that the principal must act in perfect good faith with the broker and is liable if he fails to do so, this is said: "One general principle is well settled relating to the right of a real estate broker with whom property is listed to recover a commission upon the sale of the property, viz., that in the absence of a special contract he must be the procuring cause of the sale. When a real estate broker is the procuring cause of the sale is a question of considerable difficulty; in the main, it is a question of fact. This being true, while it may be found upon the showing of some act by the broker that he was the procuring cause of the sale, it does not follow that the doing of such thing by the broker invariably entitles him to his commission. For example, a broker may be found to have been the procuring cause of the sale where the only act done by him was to show the property to the purchaser, or even to call attention to it, the sale being completed by the owner. But it does not follow in every instance that the showing of the property or calling attention to it entitles the broker to commission. The present discussion assumes that the broker has been unable to obtain an offer of the owner's price from the prospective purchaser obtained by him. Where there is no agency for a definite time, with an agreement to pay commissions if the property is sold within this time, no matter by whom, and the broker's failure results in an abandonment of his efforts, the cases within the scope of this note adhere uniformly to the principle

that the broker does not, by the mere fact that he had shown the property to a prospective customer or interested a customer therein, preclude the owner, either by himself or through another broker, from selling the property to such customer without liability for commissions," and cases from Colorado, Connecticut, Illinois, Massachusetts, Minnesota, New York, Pennsylvania, are there cited to support this rule.

The subject is pursued in a later note, 43 A. L. R. 1116 where this is said: "Although the broker may be the means of first bringing the parties together and of opening negotiations with them, yet if the negotiations are unproductive and the parties in good faith withdraw therefrom and abandon the proposed purchase and sale, a subsequent renewal of negotiations followed by a sale at a less price, does not entitle the broker to the commission as he cannot be said to be the procuring cause of sale," and in support of this statement cases from Alabama, California, Colorado, Florida, Iowa, Kansas, Michigan, Mississippi, New York and Wisconsin are there cited.

In the case of *Walsh* v. *Grant*, 256 Mass. 555, 152 N. E. 884, 47 A. L. R. 852, the same rule is applied, and it is held that "a broker with whom property is listed for sale at a specified price for cash does not earn his commission when the owner in good faith, after supposing that the property was withdrawn from the broker's hands, sells it for a much lower price, partly on time, to a customer introduced by the broker. The broker's right to a commission depends upon whether or not he has done the thing he undertook to do before his authority to do it has been withdrawn."

One test in such cases is whether or not his contract with the broker has been terminated in good faith by the principal. If so, the broker is not entitled

to commissions upon the sale which has been made after his contract has been terminated in good faith by the owner, or other person who would otherwise be liable for his commission, upon a completed sale.

Applying these established rules to this case it is manifest that it was not a case which should have been submitted to a jury in order to determine whether or not the plaintiffs were entitled to commissions, because upon the conceded facts the relations between the plaintiffs and the defendants had been terminated before the contract was made, because the brokers failed to procure the Davie contract and had ceased their efforts to procure it before it was made. In no aspect of the case can it be fairly said that they induced, secured or procured the Davie contract. It follows that the trial court should have set aside the verdict and entered judgment in favor of the defendants. Such a judgment will be entered here.

*Reversed.*