PRESENT: Kinser, C.J., Lemons, Millette, Mims, McClanahan, and Powell, JJ., and Russell, S.J.

RICHARD L. OWENS, SR., ET AL.

OPINION BY
v. Record No. 140171 SENIOR JUSTICE CHARLES S. RUSSELL
October 31, 2014
DRS AUTOMOTIVE FANTOMWORKS, INC., ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
John E. Clarkson, Judge

This appeal arises out of a dispute concerning the repair and renovation of an antique automobile. It requires us to decide whether the plaintiffs' evidence was sufficient to support their allegations of both common law fraud and violations of the Virginia Consumer Protection Act ("VCPA"), Code § 59.1-196, et seq.

Facts and Proceedings

In July 2012, Virginia Beach residents Richard L. Owens, Sr. and his wife Cynthia M. Owens (the plaintiffs) shipped to Virginia a 1960 Ford Thunderbird they purchased in Rhode Island for $11,500. The car needed extensive repairs and restoration. Mr. Owens testified that he just wanted "something to ride to the golf course once in a while."

The plaintiffs selected DRS Automotive Fantomworks, Inc., a business in Norfolk, and its owner, Daniel R. Short (the defendants), to do the work. Before either party had made any detailed inspection of the car, Mr. Owens told Mr. Short that he

wanted DRS to install a reliable fuel-injected engine, a modern suspension, and new brakes. Mr. Short could not quote an exact price without a detailed inspection of the car. Nevertheless, he gave Mr. Owens a list of repairs he recommended and estimated that, assuming there were no surprises upon a detailed inspection and no changes in the proposed work, the project could be completed for no more than $40,000. Mr. Owens agreed to proceed. By a check signed by Mrs. Owens, the plaintiffs paid the defendants $15,000 as an initial deposit. They made a second $15,000 payment after replacement parts had been purchased. The parties never entered into a written contract.

Mr. Short advised the plaintiffs that the most economical way to find a replacement engine would be to purchase a "donor car" that contained a compatible engine with low mileage. Such a "donor car" could sometimes be purchased at auction at a low price and could provide many other replacement parts at much lower cost than parts purchased at retail. The plaintiffs testified, and the defendants denied, that Mr. Short told them that such a donor car could be purchased at auction for "a few thousand dollars" which they believed meant $2,000 to $3,000.

The defendants located a 2001 Ford Crown Victoria Police Interceptor (the Interceptor) for sale by Lieutenant Alexander Theiss, USN, whose home was just "a couple [of] blocks down the street" from the defendants' place of business. The car had

2

been damaged in an accident but its engine and drivetrain were intact. Mr. Short considered the engine and drivetrain to be compatible with the plaintiffs' Thunderbird.

Lieutenant Theiss had advertised the Interceptor on the Internet for $2,000, but Mr. Short denied that he had ever seen the advertisement. Instead, Mr. Short testified that the Interceptor had come to his attention because someone gave him Lt. Theiss' telephone number. Lieutenant Theiss had placed a "for sale" sign in the Interceptor's window, containing his telephone number but not an asking price.

After some negotiations and a test drive, Mr. Short and Lt. Theiss agreed on a price of $6,000 for the Interceptor. On July 13, 2012, Mr. Short gave Lt. Theiss $4,000 in cash and Lt. Theiss gave him a handwritten bill of sale, reciting a $6,000 purchase price. They agreed that when the $2,000 balance was paid, the Interceptor would be delivered to Mr. Short. A few days later, Mr. Short gave Lt. Theiss a check for $2,000 and took possession of the Interceptor.

The Interceptor had been titled in Florida. A copy of the Florida certificate of title was introduced in evidence, showing a sale of the Interceptor from Alexander Charles Theiss to Dan

3

Short on July 13, 2012 for a price of $6,000. Both parties signed the recorded transfer at the bottom of the certificate.[1]

Mr. Short had given the plaintiffs a written notice of the terms upon which the defendants conducted their business. One of these conditions was that a 25% markup would be charged for all required parts that were to be purchased for the work. The plaintiffs made no objection to these terms. After purchasing the Interceptor, Mr. Short gave Mr. Owens a list of anticipated costs for parts and labor to complete the contemplated work. It estimated a total cost to the plaintiffs as $38,093.48. The cost for the purchase of the Interceptor, including the markup, was stated as $7,200. The defendants later amended this item to $7,500.

After receiving this list, Mr. Owens delivered the plaintiffs' second check for $15,000 to Mr. Short. During the next two months, Mr. Owens made frequent visits to DRS shop to discuss the continuing work and made a number of requests for additional work. As late as September 11, 2012, he sent an email to Mr. Short requesting that he "add to your to-do list" a

---

[1] The check, the bill of sale, and the certificate of title were all introduced in evidence during the plaintiffs' case. Because the plaintiffs called both Lt. Theiss and Mr. Short as witnesses for the plaintiffs at trial, the facts recited above were all before the court when it considered a motion to strike the plaintiffs' evidence.

4

series of additional items, including rust repair, interior fabrics, finish, and design. During this time, the plaintiffs made no objection to the $6,000 price paid for the Interceptor.

The apparently amicable dealings between the parties came to an abrupt end when Mrs. Owens, who was an attorney, wrote a letter to Mr. Short dated September 22, 2012 on her professional letterhead. The letter stated that she was acting on behalf of Mr. Owens and herself. It demanded extensive documentation of all costs for parts and labor; identification, with contact information, for all suppliers; and other information pertinent to the project. The letter threatened litigation if these demands were not fully complied with within five days.

Mr. Short said he was "stunned" by the letter. He responded in writing that the defendants would suspend work on the project until the issues between the parties were resolved. He offered the plaintiffs two opportunities to have the vehicle inspected by a representative of their choice and to have both the Thunderbird and the Interceptor removed from the defendants' premises. The plaintiffs made no response and filed this action in the circuit court, alleging breach of contract, violation of the VCPA, fraud and detinue.[2]

_____

[2] The detinue count claimed a right to recover the Thunderbird and the Interceptor. Counsel agreed on an arrangement to return

The case proceeded to a three-day jury trial. At the conclusion of the plaintiffs' case, the defendants moved the court to strike the plaintiffs' evidence as to all counts. The court granted the motion as to the fraud and VCPA counts and overruled it as to the count for breach of contract. The defense presented its evidence and the defendants' motion to strike was renewed. The court denied the motion and instructed the jury as to the count for breach of contract. The jury returned a verdict for the defendants and the court entered judgment on the verdict. We awarded the plaintiffs an appeal.

## Analysis

The plaintiffs assign three errors: (1) that the court erred in striking the evidence based on a finding that two witnesses were "believable" and "credible," thus usurping the function of the jury; (2) that the court erred in striking the evidence on the VCPA claim by ruling that a VCPA claim requires proof of fraud; and (3) that the court erred by striking the VCPA claim because the evidence was sufficient to support a judgment for the plaintiffs for violations of the VCPA.

The first and second assignments of error present questions of law. On appeal, we review such questions de novo. <u>Davis v. County of Fairfax</u>, 282 Va. 23, 28, 710 S.E.2d 466, 468 (2011).

these items to the plaintiffs. The detinue count was dismissed in the circuit court and is not involved in this appeal.

6

When reviewing the evidence upon a defendant's motion to strike the plaintiff's evidence, the duty of the court is to accept as true all the evidence favorable to the plaintiff as well as any reasonable inference a jury might draw therefrom. Austin v. Shoney's, Inc., 254 Va. 134, 138, 486 S.E.2d 285, 287 (1997). We therefore examine the state of the evidence before the court at the close of the plaintiffs' case. The crucial issue at that stage was whether the defendants had paid $6,000 for the Interceptor as they contended, or a lesser price, as the plaintiffs contended. A price of $6,000, with the agreed 25% markup, would have justified the $7,500 item for which the plaintiffs were billed; any lesser price actually paid by the defendants would have made the $7,500 amount an overcharge obtained by deception.

The only witnesses who had any knowledge of the transaction were Mr. Short and Lt. Theiss. Both testified that the purchase paid for the Interceptor was $6,000. The only documentary evidence on that point consisted of the bill of sale and the Florida title. Both showed a sales price of $6,000. No evidence was presented of any lesser or different price.

As noted, both witnesses were called by the plaintiff.

> When a defendant is called as an adverse witness the plaintiff is not bound by such of his testimony as is in conflict with evidence introduced by the plaintiff; but the plaintiff is bound by so much of

7

> the testimony of the defendant as is clear,
> reasonable and uncontradicted.

Weddle v. Draper, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963) (emphasis added).

Mr. Short's testimony as to the price of the Interceptor was uncontradicted and the plaintiffs are bound by it. Lieutenant Theiss was also called as a witness for the plaintiffs. Although plaintiffs' counsel attempted to cross-examine him to attack his credibility, the court was never asked to declare him an adverse witness[3] and repeatedly sustained objections to leading questions. The plaintiffs are therefore bound by his uncontradicted testimony. See Clarke v. Cosby, 154 Va. 267, 271, 153 S.E. 727, 728 (1930).

When considering the motion to strike the plaintiffs' evidence, the court had to determine whether there was an issue of fact in dispute. Here, the jury had evidence before it that a $6,000 price had been paid for the Interceptor and a complete absence of evidence that any other price had been paid.

---

[3] See, e.g., Va. R. Evid. 2:611(c) (providing that "[l]eading questions should not be used on the direct examination of a witness except as may be permitted by the court in its discretion to allow a party to develop the testimony" and that "[w]henever a party calls a hostile witness, an adverse party, a witness having an adverse interest, or a witness proving adverse, interrogation may be by leading questions").

8

The plaintiffs contend that there was circumstantial evidence to permit the jury to infer that the two witnesses had testified untruthfully and that a lesser price had been paid. Our examination of the record, however, shows that those circumstances do not tend to prove any fact, but are merely supportive of a suspicion based entirely on conjecture.[4]

> Like presumptions, inferences are never allowed to stand against ascertained and established facts . . . . an inference which the plaintiff says would impose liability upon the defendants must give way to the positive, uncontradicted evidence which exonerates the defendants from liability and demonstrates that the inference is based upon speculation and conjecture.

Ragland v. Rutledge, 234 Va. 216, 219, 361 S.E.2d 133, 135 (1987) (citations omitted).

It is true, as the plaintiffs argue, that the court commented, when making its ruling, that the testimony of the two witnesses was credible and believable, but in the context of the record before the court, those comments were indicative only of

---

[4] The circumstantial evidence consisted of Lt. Theiss' earlier Internet advertisement of the Interceptor for sale for $2,000 and that someone at DRS had responded to the advertisement by email. Mr. Short denied that he was the author of the email and Lt. Theiss had no recollection of it. Discovery directed to Lt. Theiss, Mr. Short, DRS, Craigslist and Microsoft Corporation failed to produce any such email. The plaintiffs contend that this, coupled with the fact that part of the price paid for the Interceptor was in the form of a $2,000 check, gives rise to a suspicion from which the jury could conjecture that the testimony of the witnesses was untrue and the documents contained false information.

the fact that their testimony had not been refuted and was not, on its face, unworthy of belief. We therefore hold that the court did not usurp the function of the jury.

The second and third assignments of error overlap and will be considered together. The second assignment of error asserts that the court erred in holding that a violation of the VCPA requires proof of fraud. Common law fraud consists of (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance thereon by the party misled, and (6) resulting damage to the party misled. The plaintiff bears the burden of proving these elements by clear and convincing evidence. Richmond Metro. Auth. v. McDevitt Street Bovis, Inc., 255 Va. 553, 557, 507 S.E.2d 344, 346 (1998).

Proof of fraud in a consumer transaction is alone sufficient to establish a violation of the VCPA, but the legislative purpose underlying the VCPA was, in large part, to expand the remedies afforded to consumers and to relax the restrictions imposed upon them by the common law. That remedial purpose would be nullified by an interpretation of the VCPA that construed it as merely declarative of the common law. We adhere to rules of statutory construction that discourage any interpretation of a statute that would render any part of it useless, redundant or absurd. Instead, we seek to read

10

statutory language so as to give effect to every word. Lynchburg Division of Social Services v. Cook, 276 Va. 465, 483, 666 S.E.2d 361, 370 (2008). Therefore, we agree with the plaintiffs' argument that the VCPA's proscription of conduct by suppliers in consumer transactions extends considerably beyond fraud.

The VCPA clearly does not require the consumer to prove in every case that misrepresentations were made knowingly or with the intent to deceive, because of its additional provision that damages may be trebled, but only in cases where the court finds that the violation was "willful." Code § 59.1-204(A).

The VCPA, however, still requires proof, in misrepresentation cases, of the elements of reliance and damages. Code § 59.1-204(A) provides, in pertinent part: "Any person who suffers loss as the result of a violation of this chapter shall be entitled to initiate an action to recover actual damages or $500, whichever is greater." (Emphasis added.)

Applying those principles to the present case, it is apparent, as stated above, that the plaintiffs failed to produce evidence of misrepresentations concerning the purchase price of the Interceptor, the donor car. The plaintiffs also argue that the defendants violated the VCPA by misrepresentations concerning whether the donor car would be purchased at an

11

auction, whether its engine would be "certified" (the term was never defined),[5] and Mr. Short's "certifications in multiple automotive restoration fields."

If these were misrepresentations, the plaintiffs offered no evidence of any loss they suffered from reliance upon them. They never complained about the quality of the parts the defendants provided, the time required to complete the project, or the quality of the work that was being performed until the plaintiffs interrupted it. The plaintiffs' evidence, therefore, failed to meet the requirements of Code § 59.1-204(A): reliance and resulting damages. If an unwritten contract existed between the parties, the jury, after hearing all the evidence, found that the defendants had not breached it.

In granting the motion to strike, the circuit court commented that there had been no proof of fraud because the plaintiffs' complaint expressed all allegations of VCPA violations in terms of the elements of common law fraud. We do not construe the court's words to constitute a ruling that all claims under the VCPA must be supported by proof of fraud.

---

[5] Mrs. Owens testified that she did not care what kind of an engine would be provided as long as it was "reliable."

### Conclusion

For the reasons stated, we find that the evidence on the VCPA claim was insufficient to go to the jury and we find no error in the rulings of the circuit court.  Accordingly, we will affirm the judgment.

<u>Affirmed.</u>

JUSTICE POWELL, with whom CHIEF JUSTICE KINSER and JUSTICE MIMS join, dissenting in part and concurring in part.

In my opinion, the majority fails to recognize key evidence and fails to give the proper weight to the circumstantial evidence establishing that Mr. Short defrauded the plaintiffs. Therefore, I must respectfully dissent.

Under the majority's logic, the circumstantial evidence of fraud in this case must be disregarded in the face of the alleged wrongdoers' claim that they did not commit fraud.  Such a holding ignores this Court's long recognition that "it is not necessary that fraud be proved by direct and positive evidence. Circumstantial evidence is not only sufficient, but in most cases is the only proof that can be adduced."  <u>Cook v. Hayden</u>, 183 Va. 203, 209, 31 S.E.2d 625, 627 (1944).

> Fraud is seldom, if ever, provable by direct
> testimony, but usually must be shown by circumstances
> which are sufficient to convince fair-minded men that

13

they would not have occurred without the existence of a fraudulent purpose and design. Fraud is a mixed question of law and fact but, in most cases, is a jury question. While fraud may be shown by circumstantial evidence, it must have a logical and substantial basis and can not rest upon vague suspicion and surmise.

French v. Beville, 191 Va. 842, 856, 62 S.E.2d 883, 889 (1951).

There is clear evidence in the record from which the jury could have concluded that Lt. Thiess only asked $2,000 for the Interceptor and that was the price DRS paid. Although the majority states that it reviewed the evidence in the light most favorable to the plaintiffs, it fails to give the appropriate weight to the circumstantial evidence. In my opinion, when all of the circumstantial evidence is properly considered, it is more than sufficient to allow the jury to decide the issue.

At trial, Mrs. Owens testified that Mr. Short was only authorized to spend between $2,000 and $3,000 on the donor car. The seller, Lt. Thiess, had advertised his Interceptor on Craigslist with an asking price of $2,000. The record further demonstrates that, at 10:51 A.M. on July 13, 2012, Mr. Short[*]

_____

[*] A Craigslist server document showed that Mr. Short's email address was used to reply to the ad on July 13, 2012.

14

responded to the advertisement via email.  At 11:03 A.M., exactly twelve minutes later, Lt. Thiess called DRS.  Then, on July 16, 2012, DRS issued a check to Lt. Thiess for $2,000 and took possession of the Interceptor.

Thus, contrary to the majority opinion, the jury was not left with a "complete absence of evidence that any other price had been paid" for the Interceptor.  Rather, viewed in the light most favorable to the plaintiffs, circumstantial evidence establishes that Mr. Short and DRS purchased the Interceptor for only $2,000.  This evidence directly contradicts the claim that the Interceptor was purchased for $6,000.

Furthermore, the majority also fails to give proper weight to the role of the jury under the facts of this case.  The majority acknowledges the rule that:

> When a defendant is called as an adverse witness the plaintiff is not bound by such of his testimony as is in conflict with evidence introduced by the plaintiff; but the plaintiff is bound by so much of the testimony of the defendant as is clear, reasonable and uncontradicted.

Weddle v. Draper, 204 Va. 319, 322, 130 S.E.2d 462, 465 (1963).

While the majority rests its opinion on the basis that the testimony was uncontradicted, it gives no weight to the fact

15

that the jury could have found that the testimony was unreasonable in light of the fact that Mr. Short paid three times more for the Interceptor than Lt. Thiess advertised. Therefore, in my opinion, the trial court erred in granting the motion to strike as to the fraud claim.

With regard to the second and third assignments of error, I agree with the majority's legal analysis, but I ultimately disagree with the conclusion the majority reaches. The allegations underpinning the plaintiff's fraud claim were incorporated into the VCPA claim. Therefore, for the reasons I have previously stated, I believe that the trial court erred in granting the motion to strike as to the VCPA claim. Accordingly, I would reverse the trial court and remand for further proceedings below.